**TANNER, Plaintiff-Appellee v. HUNTINGTON NATIONAL BANK OF COLUMBUS, Exr., Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 3666.   Decided December 13, 1943.

410

Kennedy & Horner, Columbus, for plaintiff-appellee.
Luther L. Boger, Columbus, for defendant-appellant.

## OPINION

By BARNES, P. J.

The above-entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio. Plaintiff's action against the defendant was predicated upon a claimed oral contract entered into between plaintiff and defendant's decedent during the month of April, 1935, whereby plaintiff was to be paid one-half the profits arising through the purchase by defendant's decedent of stock or certificates of deposit issued by the Buckeye State Building & Loan Company, Columbus, Ohio. At this time the plaintiff, Tanner, was in the employ of The Buckeye State Building & Loan Company as superintendent of the building, and supposedly had some information relative to the stock or certificates of deposit of the building and loan that was considered very helpful to defendant's decedent in making an investment where handsome profits were assured.

The defendant's answer, after admiting certain formal allegations, was a general denial. The case was tried before a jury and a verdict was returned in favor of the plaintiff.

Motion for new trial was interposed, overruled and judgment entered on the verdict. In due time notice of appeal was filed, thus lodging the case in our court. Prior to the bringing of the action by the plaintiff Mr. Urlin had died; thereby plaintiff was presented with the problem of proving his oral contract. Apparently no one was present at the time of the alleged oral contract, supposedly made in 1935, except the plaintiff and defendant's decedent.

Under the well recognized provisions of the Ohio Code (§11495 GC) plaintiff was not permitted to testify. Plaintiff's father, Judge John R. Tanner, testified to an incident which occurred on a Saturday early in October, 1935.

Judge Tanner and his son, the plaintiff, were in Columbus expecting to go to a football game at the Ohio Stadium. They

met Mr. Urlin on Gay Street and the latter proposed a bet of one dollar on the result of the game. The proffered bet was accepted by the plaintiff and thereafter Mr. Urlin stated that if he won he would take it out of their profits.

This evidence would be corroborative if the record presents any substantive evidence to be corroborated. Another witness was offered by plaintiff through the deposition of Florence R. Chase, formerly and for many years a secretary to Mr. Urlin. This witness likewise gives what would be corroborative testimony, but standing alone would not be sufficient to prove a contract to pay any particular amount of commission. Miss Chase testifies that she recalls the incident when Mr. Tanner came up to the office and was in conference with Mr. Urlin in another room. She heard no part of the conversation. After Mr. Tanner left the office Mr. Urlin followed him to the outer door and then seated himself in a chair across the desk from Miss Chase. Urlin then and there told her that he and Tanner were making a deal and that he would buy stock or other securities of the Buckeye State Building & Loan Company of Columbus, Ohio, and that it would be necessary for her to make out the check when the deal was completed, but that she should not say anything about it, because neither he nor Mr. Tanner would want it to become public knowledge. Miss Chase further testified that at a later date, possibly a year or two afterwards, she, at Mr. Urlin's request, wrote out a check to Mr. Tanner in the sum of $250. He asked her to write out the check, stating that he owed Mr. Tanner money, and at the same time saying that he had sold some of the Building & Loan securities. Through other evidence it develops that the date of this check was June 16, 1938. Mr. Urlin's total purchases were slightly over $14,000.00 par value of stock. These purchases were made on four different occasions. The first purchase, April 20, 1935, was 85 shares at a price of $3867.50, or $44.50 per unit. The first sale by Mr. Urlin was May, 1937. On this date, 53 shares were sold for $4767.88, or practically $90.00 per unit. No other or further shares of stock were sold by Mr. Urlin during his lifetime. Following his death the stock was sold by his executor at par. The $250.00 check, dated June 16, 1938, would be more than a year after Mr. Urlin had made a sale of 53 shares of stock.

The $250.00 would not be anyways near the 50% profit which the plaintiff claims.

In the course of plaintiff's case John L. Barnes was called as a witness for cross-examination. This witness was an as-

sistant trust officer of the defendant bank. A subpoena had been issued duces tecum for certain documents and letters. During the interrogation of this witness we find the following:

"Q. Mr. Barnes, you in your subpoena was directed to bring, if you could find it, the original letter of Mr. Tanner to Mr. Urlin, dated November 20, 1940?

A. Yes, sir.

MR. KENNEDY: Mark this Plaintiff's Exhibit 'C'."

The letter was so marked.

"MR. BOGER: Note our objection also to that. It was a self-serving declaration in addition to the others.

THE COURT: Of course I don't know what the letter is. I don't know anything about this evidence, whether it is objectionable or not.

Q. I will hand you a document, Mr. Barnes, that has been marked Plaintiff's Exhibit 'C' and will ask you to state where you found that since you brought it here?

A. Well, I found this among Mr. Urlin's effects, segregated with other correspondence relative to the matter.

Q. Did you also find a carbon copy of a letter of January 14, 1941, of Mr. Urlin's to Mr. Tanner in the correspondence?

A. Yes.

MR. KENNEDY: Mark this Plaintiff's Exhibit 'D'."

The letter was marked Plaintiff's Exhibit "D".

"Q. I will hand you Exhibit 'D' and ask you if that letter was in your files as you say relating to this case?

A. Yes, sir.

Q. You were also requested to bring down a letter dated December 28, 1940, of Mr. Urlin to the trust officer of the bank. Do you have that letter?

A. Yes."

And thereupon the letter was marked Plaintiff's Exhibit "E".

"Q. I am handing you a letter which is marked Plaintiff's Exhibit 'E', and I will ask you how that came into your possession?

A. In the same manner as the other letters relative to the matter.

Q. I believe you stated it was in the file?
A. Yes.
Q. Among Mr. Urlin's effects?
A. Yes, except his last letter, I expect that was in the file of the bank."

Counsel for plaintiff offered all three leters in evidence. Counsel for the defendant said that he was making no objection to the introduction of Exhibits "D" and "E", but did object to the introduction of Exhibit "C".

The court admitted the three letters, and the same were at once read to the jury. Counsel for defendant moved that the letter designated as Exhibit "C" be stricken from the record as a self-serving declaration. This was overruled.

The admission of Plaintiff's Exhibit "C" presents the major question urged under appellant's assignments of error. If the court was not in error in admitting in evidence Plaintiff's Exhibit "C", being letter from plaintiff, J. Robert Tanner, to Mr. Urlin, then we would have no difficulty in sustaining the verdict and judgment. However, if the court was in error in admitting this letter in evidence, then we will have no alternative but to reverse for the reason that without this letter the record presents nothing in establishing all the elements of the claimed oral contract. This particular letter, dated November 20th, written to plaintiff and addressed to defendant's decedent, in substance states the following: The first paragraph relates that the writer had made numerous attempts to see Mr. Urlin, but he had not been able to find him in the office. The next paragraph is very lengthy. We quote verbatim:

"Due to the uncertainties of life I wish to recall to your mind a verbal agreement made upon your suggestion sometime during 1934. Upon my recommendation you purchased about $14,000.00 worth of Buckeye Building and Loan stock at an average of about $60.00 for each $100.00. The stock for some time has been worth its face value. The agreement, as suggested by you, was that I would receive one-half (½) of the profit. As I figure it, the profit would amount to $5600.00 as a whole, my share being $2800.00. During the month of June 1938, you sold some and gave me my share, which amounted to $250.00 which would leave a balance due me of $2550.00."

A third short paragraph reads as follows:

"I don't know how you feel about this matter but it was your agreement and I would appreciate it very much if the matter could be settled. Hoping to see you in the near future."

Plaintiff's Exhibit "D" was a letler written by Mr. Urlin on his letterhead and under date of January 14, 1941, and addressed to J. Robert Tanner, London, Ohio. This letter referred to plaintiff's letter under date of November 20th. Without quoting it, it is sufficient to state that it categorically denied every statement and claim of any oral contract such as plaintiff set out in his letter. In the letter the check of $250.00 was referred to as a gift. The last paragraph attempted to make the denial very forcible, and is in the following language:

"I can't understand why that under the circumstances you wrote me that kind of a letter and I came to the conclusion that you were either drunk or crazy."

Plaintiff's Exhibit "E" was a letter dated December 28th, written by Mr. Urlin on his letterhead and directed to the trust officer of The Huntington National Bank. The letter purported to enclose plaintiff's letter of November 20, 1940, and makes comment that the man who wrote it must be either drunk or crazy for he had not any claim whatsoever against him. In the second paragraph he makes the statement that plaintiff did advise the writer to buy some of the Buckeye Building & Loan stock, which he did, through authorized brokers to whom he had to pay commission. He makes further reference to the fact that Mr. Tanner at the time was in the employ of the Buckeye Building & Loan and was acting in their behalf. He further denies that there was any conversation at any time regarding any commission or any share of profits.

It is unnecessary to quote further from either of the two letters, but suffice to say that there is nothing in either of the two which in any ways admits plaintiff's claimed oral contract.

We now return to the Tanner letter marked Plaintiff's Exhibit "C". From the time this case was submitted our reaction was that the trial court was in error in admitting the letter, Plaintiff's Exhibit "C". Since that time we have spent many hours considering the question in all its phases, read and reread the briefs, checked the cited cases, and the sum total of our research substantiates our original conclusion, that the

letter, Plaintiff's Exhibit "C", was improperly admitted in evidence. **Tolerton, Exr., v Robinson, 13 C. C. (N. S.), 171.** It would be a peculiar law that would prohibit a party from testifying where the real party to a claimed contract is deceased, and then permit a party to perpetuate his testimony or make it admissible in evidence by writing in full detail what he claimed to be the oral contract. Counsel for plaintiff admit that the evidence "C" would not have been admissible except for the fact that it is admitted in connection with "D" and "E", both being letters written by defendant's decedent. This argument is just as startling. Certainly written denial by a defendant should not be a supporting ground for admitting a letter which is self-serving in its language. Authorities cited by counsel for plaintiff are not in point. They are presented in such great number that it would unduly add to the length of this opinion if each and every case was taken up and analyzed. We will do it in a general way and think thereby we will cover every question advanced.

The first citation is from **O. Jur., Vol. 17, p. 305.** A paragraph it quoted wherein it is stated that a self-serving declaration does not apply where it is apparent from all the circumstances that the declarations were not made for the purpose of being self-serving, but merely as an expression of the state of declarant's mind or belief at the time and place. It is argued that the purport of this quotation makes it a test as to whether or not the declaration when made was intended to be self-serving. An examination of this same page of Ohio Jurisprudence in the earlier paragraphs discloses that no such rule is intended. The note appearing under the above paragraph makes reference to a decision by the Circuit Court of Ohio and found in **10 O. C. C. (N. S.) 297.** Upon an examination of this case it will be found that the court expressly states that the declaration sought to be introduced would clearly not be admissible for the purpose of proving a fact. This action was one for personal injuries and the question was whether or not the plaintiff was guilty of contributory negligence. The court held that his mental state, what he did or did not do, would bear on the question of contributory negligence. For that reason and that reason alone and for that purpose alone the evidence was admitted. There is a line of cases which holds that where a contract is entered into through letters, that such letters are admissible in evidence as supporting a course of conduct. We have no difficulty in agreeing with this principle. We also find some authorities that where admittedly a con-

tract exists between the parties, but there is some difference of opinion as to just what the contract was, letters may be properly admitted as disclosing the construction that the parties placed upon the contract themselves.

These situations do not fit the instant case. We find other authorities that letters are sometimes admitted in evidence as a part of the res gestae. Of course it is well known that the theory of res gestae is not applicable except in considering close proximity in point of time. The letter, Exhibit "C" in the instant case was written some five years after the claimed oral contract, and for that reason if for none other, the res gestae principle would not be applicable.

It may also be pointed out that the letter in question in no sense constituted a part of the contractual acts between the parties. None of the letters, "C", "D" or "E", would lend any aid as supporting the making of a contract. The sum total of their significance is that plaintiff-appellee was asserting that an oral contract was entered into and defendant's decedent was urging that no such contract was entered into.

We regret very much that we are constrained to arrive at the conclusion that we do. Our acquaintance with plaintiff and the fact that he won in the trial court makes up sympathetic with his right of recovery. However, we know that plaintiff, being a lawyer, recognizes that courts must try cases uninfluenced by their emotions, and controlled only in the effort to pronounce the law as they see it. This we have done in the instant case and we are forced to determine that the trial court was in error in admitting in evidence over objection of defendant, Plaintiff's Exhibit "C". With this evidence eliminated there is not sufficient remaining to support a verdict in favor of plaintiff. The question naturally arises as to whether we should enter final judgment or remand for a new trial. There is always a possibility that litigants may find additional evidence, and hence it is a very rare occurrence that a court should enter a final judgment where this possibility exists.

Therefore, we reverse and remand for a new trial.

Costs in this court will be adjudged against the appellee.

HORNBECK, J., not participating.

GEIGER, J., concurs in judgment, basing his judgment upon questions of law; not upon weight of the evidence.